UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

HENRY JEROME DECKER, SR.,                                    Case No.: 3:12-CV-632-AC

                        Plaintiff,                          FINDINGS AND
                                                  RECOMMENDATION

        v.

GEMB LENDING, INC., a Delaware
corporation; and SANTANDER
CONSUMER USA INC., an Illinois
corporation,

                        Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

       This dispute revolves around attempts by defendants Santander Consumer USA Inc.

("Santander"), and GEMB Lending, Inc. ("GEMB"), to collect on a debt that had previously been

settled, and reports to credit bureaus that the debt was outstanding and delinquent. Currently before

the court is Santander's motion to dismiss the claims asserted against it in the complaint filed by plaintiff Henry Jerome Decker ("Decker"), in state court on March 9, 2012, and removed to this court on April 11, 2012 ("Complaint").   The court finds that Decker has adequately alleged that Santander is a "debt collector" and that Santander made false and defamatory statements to various credit bureaus about Decker with knowledge of their falsity and with malicious intent, but that Decker has failed to allege first-party reliance on such statements or the existence of special relationship between himself and Santander creating a heightened duty of care.   Accordingly, the court recommends that Santander's motion to dismiss be denied with regard to Decker's claims based on federal and state statutes and for common-law defamation and granted with regard to his common-law fraud and negligence claims.

*Background*

In October 2006, Decker purchased a 2007 Monaco Coach recreational vehicle and financed $422,153.50 of the purchase price through GEMB (the "Loan").  (Compl. ¶ 6.)  Decker defaulted on the Loan in 2010.  (Compl. ¶ 7.)  On January 25, 2011, Decker and GEMB agreed in writing that GEMB would "release any claim against Decker and release any lien rights against the RV" in exchange for a $230,000 payment from Decker ("Settlement").  (Compl. ¶ 8-9.)  GEMB also agreed to "report this matter to the credit bureaus as 'Charged off-Settled in full.'" (Compl ¶ 9.)

Despite the Settlement, GEMB sent a letter to Decker on April 20, 2011, indicating that a balance of $178,734.59 remained on the Loan and that the Loan had been transferred to Santander. (Compl. ¶ 11.)  Decker alleges that GEMB and Santander had a "close business relationship" and that Santander "knew or should have known at the time that Plaintiff's debt to Defendant GEMB had been settled and that no outstanding debt existed."  (Compl. ¶ 12.)  Santander subsequently reported

Page 2 - FINDINGS AND RECOMMENDATION                                      *{SIB}*

to three major credit bureaus that the Loan had an outstanding balance of $178,734 and was past due in the amount of $39,221, and GEMB reported that it had written off $408,764 of the Loan.  (Compl. ¶¶ 13-14).

On May 2, 2011, Decker sent a letter to GEMB advising it had incorrectly informed Santander that a balance remained on the Loan and asking GEMB to work with Santander to remedy the situation.  (Compl. ¶ 16.)  Shortly thereafter, Decker called Santander directly and informed it that the Loan had been resolved by the Settlement and no outstanding balance remained.  (Compl. ¶ 18.)  In both June and July, 2011, Santander again reported to the three credit bureaus that Decker still owed $178,734 on the Loan and that more than $45,000 remained past due.  (Compl. ¶¶ 19-20.) Also in July 2011, GEMB reported to one credit bureau that $408,734 was past due on the Loan and to two other credit bureaus that the Loan was in "Chargeoff or Collection" – not "Charged Off – Settled in Full" as agreed under the Settlement.  (Compl. ¶ 21.)

In late July 2011, Decker called Santander again to again advise it that the Loan was settled in January.  (Compl. ¶ 22.)  Decker emailed a copy of the Settlement to Santander the next day – July 21, 2011.  (Compl. ¶ 22.)  On September 21, 2011, Decker sent letters to both Santander and GMEC stating that the Loan had been fully resolved by the Settlement, there was no outstanding debt, and asking them to remedy the situation.  (Compl. ¶ 23.)

On October 27, 2011, Santander acknowledged in a letter to Decker that the Loan had been settled and that Decker's account "now reflects a zero balance."  (Compl. ¶ 23.)  However, in November 2011, Santander reported to various credit bureaus that the Loan was $178,734 past due, Decker was either 120 or 150 days behind in his payments, or the Loan had an outstanding balance of $178,734, of which $58,832 was past due.  (Compl. ¶ 23.)  That same month, GEMB again

reported that the Loan was $408,734 past due or that it was in "Chargeoff or Collection."  (Compl. ¶ 26.)

In February 2012, Santander issued a 1099 form indicating that $178,734.59 of the Loan had been cancelled on October 12, 2011, despite the fact that the Settlement occurred in January 2011. (Compl. ¶ 27.)  As of March 2012, the month Decker filed the Complaint, Decker's credit report continued to reflect the false information provided by Santander and GEMB, despite many requests by Decker to Santander and GEMB to correct the inaccuracies.  (Compl. ¶ 28.)

As a result of the inaccurate reporting of the status of the Loan to the credit bureaus by Santander and GEMB, Wells Fargo denied Decker's application for a credit card made in April 2011, specifically citing a "serious delinquency" on Decker's credit report.  (Compl. ¶ 15.)  Also, in May 2011, Wells Fargo increased the interest rate from 7.99% to 12.99% on a credit card already issued to Decker with an outstanding balance of $94,000 based on negative information appearing on Decker's credit report.  (Compl. ¶ 17.)

In the Complaint, Decker asserts claims against Santander for violation of the Federal Unlawful Debt Collection Act (the "Federal Act") and the Oregon Unlawful Debt Collection Act (the "Oregon Act"), as well as common-law claims for fraud, negligence, and defamation, all based on Santander's attempts to collect on, and false reports to credit bureaus about, the Loan which it knew or should have known was fully settled.   Decker seeks economic damages in the amount of $100,000, non-economic damages in the amount of $250,000, statutory damages of up to $1,000, punitive damages in an amount to be named, and attorney fees and costs.  Santander moves to dismiss all of the claims asserted against it under FED. R. CIV. P. 12(b)(6) for failure to state a claim.

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909 at *4 (9th Cir. Sept. 12, 2012) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"(quoting *Iqbal*, 556 U.S. at 679))).

*Discussion*

I. Second Claim for Relief – Violation of the Federal Act

Decker alleges that Santander violated the Federal Act by falsely representing the character, amount, or legal status of the Loan in attempts to enforce the Loan, reporting information to the

credit bureaus which it knew to be false, and failing by verify the validity of the Loan after it was disputed by Decker.   Santander argues that because it purchased the Loan from GEMB and was attempting to collect the Loan on its own behalf, it is not a debt collector under the Federal Act and not subject to its provisions.   Decker asserts that because Santander purchased the Loan after it was in default, it falls with the definition of "debt collector" for purposes of the Federal Act.

The question of whether a defendant is a "debt collector" is a "threshold issue" for claims under the Federal Act. *Hulse v. Ocwen Fed. Bank, FSB*, 195 F.Supp.2d 1188, 1203 (D. Or. 2002). To state a valid claim for violation of the Federal Act, a plaintiff must allege "that the defendant collecting the 'debt' is a 'debt collector'". *Uyeda v. J.A. Cambece Law Office P.C.*, No. C 04-04312 JW, 2005 WL 1168421, at *3 (N.D. Cal. May 16, 2005).  Decker specifically alleges Santander is a debt collector as defined by 15 U.S.C. § 1692(a)(6).[1]  Accordingly, Decker has alleged this specific element of a *prima facie* claim against Santander for violation of the Federal Act.   However, Santander argues that other allegations in the Complaint establish that, as the purchaser of the Loan, it was collecting the Loan as a creditor, not as a debt collector.

The Federal Act defines "debt collector", in pertinent part, as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which

---

[1]At oral argument, Decker provided the court a copy of a letter he received advising him that the Loan had been transferred to Santander (the "Letter").  The Letter, which was referenced in the Complaint, is signed "Sincerely, Santander Consumer USA, Inc." and contains a representation that "[t]his communication is from a debt collector."   The Letter, and the representation contained therein, supports the allegation that Santander is a "debt collector" under the terms of the Federal Act.

would indicate that a third person is collecting or attempting to collect such debts. . . . The term does not include –

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

* * *

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt with was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. 1692a(6) (2012).  The term "creditor" is defined as:

any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. 1692a(4) (2012).

The Seventh Circuit has clearly and consistently held that "a party that seeks to collect on a debt that was in default when acquired is a debt collector under the FDCPA, 'even though it owns the debt and is collecting for itself.'"  *Ruth v. Triumph P'ships*, 577 F.3d 790, 797 (7th Cir. 2009) (quoting *McKinney v. Cadleway Props. Inc.*, 548 F.3d .496, 501 (7th Cir. 2008); *see also Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)("[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.").  The Seventh Circuit relies on the language of the Federal Act and legislative history to support this conclusion.

The Federal Act clearly distinguishes between "debt collectors" and "creditors."  *Schlosser*, 323 F.3d at 536.  The legislative history explains that the distinction is based on the different

relationship existing between creditors and debt collectors and the consumer.

> Creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," . . . are not covered by the Act. Instead, the Act is aimed at debt collectors, who may have no "future contact with the consumer and often are unconcerned with the consumer's opinion of them."

*Id*. (quoting S. Rep. 95-382, at 9 (1977), *reprinted* in 1997 U.S.C.C.A.N. 1695, 1696). The Third, Fifth, and Sixth Circuits have taken a similar approach to determine whether an assignee of a debt is a "debt collector" subject to the provisions of the Federal Act. *See Fed. Trade Comm'n v. Check Investors, Inc.*, 502 F.3d 159, 174 (3rd Cir. 2007)("Congress has directed us to focus on whether a debt was in default when acquired to determine the status of "creditor" vs. "debt collector."); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)("The legislative history of section 1962(a) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time is was assigned."); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996)(court found that assignee of debt was not debt collector because the debts at issue were not in default at the time of the assignment or transfer).

The Ninth Circuit does not appear to have directly addressed this issue. However, in *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071 (9th Cir. 2011), the court found that because the defendant had not acquired the debt before it was payable, and therefore, before it was in default, the defendant was not a debt collector under the Federal Act. In considering whether the debt was in default, the court relied on the legislative history of the Federal Act, which establishes that a "debt collector does not include those 'mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing'" as well as the cases of *Check*

*Investors* and *Schlosser*, discussed above. *De Dios*, 641 F.3d at 1075 n.3. This holding is consistent with that of the Third, Fifth, Sixth, and Seventh Circuits.

Judge Hubel of this court directly addressed the issue and, while finding that the question of whether the debt was in default at the time it was transferred or assigned was relevant, he focused primarily on the purpose of the assignment rather than the status of the debt. *Hulse v. Ocwen Fed. Bank, F.S.B.*, 195 F. Supp. 2d 1188 (D. Or. 2002). In *Hulse*, the originator of a loan assigned the deed of trust securing the loan to a sister corporation for servicing. *Id*. at 1193. The debtor defaulted on the loan and after numerous accommodations to the debtor failed to bring the loan current, the sister corporation reassigned the deed of trust back to the originator of the loan, who initiated foreclosure proceedings. *Id*. at 1194-1197. The debtor sued the originator of the loan claiming that it violated the Federal Act. The debtor moved for summary judgment, arguing that it was not a debt collector subject to the statute. *Id*. at 1202.

The court found that the defendant lost the ability to claim the originator exception when it assigned its interest in the trust deed but that it might still qualify as a "creditor" under the Federal Act. *Id*. at 1202-03. The question then became whether the transfer back to the originator of the loan was for the sole purpose of collecting the amounts due on behalf of the sister corporation. If so, the originator could not qualify as a creditor under § 1692a(4). The court explained:

> [h]ere, OFSI transferred its beneficial interest to OFB in April 2000, after plaintiffs were in default. Although the record strongly suggests that OFB received the assignment from OFSI for the purpose of collecting a debt owed to itself and not to another, I cannot make that determination as a matter of law on this record. If the reassignment from OFSI to OFB was "solely for the purpose o[f] facilitating collection of such debt for another[,]" the creditor exception to the debt collector definition does not apply to OFB. If the reassignment was not for that purpose, OFB is not a debt collector under the statute. Because the evidence on this issue is not fully developed in this record, I deny summary judgment to OFB on the FDCPA

claim.

*Id*. at 1203

Based on these precedents, it is clear that Santander, who purchased the Loan after it was in default, may qualify as a debt collector under the Federal Act.  Decker has alleged facts which support this allegation.  The issue of whether Santander would qualify as a debt collector merely because it purchased the Loan while in default or whether Decker must show that Santander purchased the Loan solely to facilitate collection for GEMB does not need to be decided at this motion to dismiss stage.  Santander's motion to dismiss this claim should be denied.

## II.  Third Claim for Relief – Violation of the Oregon Act

In his Third Claim for Relief, Decker alleges that Santander violated the Oregon Act when it "attempted to or threatened to enforce a right that it knew did not exist, in violation of ORS 646.639(2)(k)."  (Compl. ¶ 47.) Santander argues that Decker's failure to allege it had knowledge of the Settlement at the time it obtained the Loan from GEMB is fatal to Decker's claim under the Oregon Act.

Santander ignores allegations that Santander knew or should have known at the time the Loan was transferred it had been settled and there was no outstanding debt.  (Compl. §§ 12, 47.) Additionally, Decker alleges that the offensive conduct continued even after Decker advised, and provided a copy, of the Settlement to Santander.

Decker has adequately alleged that Santander attempted to enforce the Loan, or its right to collect on the Loan, after it knew of the Settlement in violation of the Oregon Act.  Santander's motion to dismiss Decker's Third Claim for Relief should be denied.

III.  Preemption of Common-Law Claims

In his Fourth, Fifth, and Seventh Claims for Relief, Decker alleges the common-law claims of fraud, negligence, and defamation based on Santander's false reports to credit bureaus that Decker was past due on an outstanding debt of $178,734.  Santander asserts that all of these claims are preempted by the  Fair Credit Reporting Act ("Credit Act") and should be dismissed.

The Credit Act, which was enacted in 1968, originally had only one provision relating to preemption which currently[2] provides, in pertinent part:

> **(e) Limitation of Liability.**  . . . [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to . . . [this title], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (2012).  In 1996, Congress amended the Credit Act to provide additional limitations on actions brought under state law without repealing § 1681h(e).  The new limitation provides, in pertinent part:

> **(b) General Exceptions.**  No requirement or prohibition may be imposed under the laws of any State –
>
> > (1) with respect to any subject matter regulated under  –
> >
> > * * *
> >
> > (F) [15 U.S.C. 1681s-2], relating to the responsibilities of persons

---

[2]The only change to the original version of this provision occurred in 1996 when the phrase "or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report".  *See* Act of Sept. 30, 1996, Pub. L. No. 104-208, § 2408.

who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F) (2102).  The existence of these two preemption provisions have created

tension with regard to the preemption of state common-law claims which had been recognized and

addressed by many district courts.  These courts have taken three different approaches in attempt to

reconcile these two provisions, namely:

> the "total preemption" approach, the "temporal" approach, and the "statutory"
> approach.  Under the "total preemption" approach, t(b)(1)(F) does indeed preempt
> all state law claims against furnishers of credit information arising from the conduct
> regulated by 1681s-2, thus effectively repealing the earlier preemption provision,
> 1681h(e).  Under the "temporal" approach, preemption depends on whether the cause
> of action arises before or after a credit information furnisher has notice of a consumer
> dispute.  Finally, under the "statutory" approach, t(b)(1)(F) preempts only state law
> claims against credit information furnishers brought under state statutes, just as
> 1681h(e) preempts only state tort claims.

*Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 424-25 (E.D. Pa. 2006).

This district has addressed preemption under the Credit Act on at least four occasions with

the majority, and the most recent, cases specifically adopting the "statutory approach."   Judge

Brown first addressed the question in 2006, finding that plaintiff's claim for defamation was barred

by either preemption provision.  *Cope v. MBNA Am. Bank, NA*, No. 04-CV-493-BR, 2006 WL

655742 at *9 (D. Or. March 8, 2006).   Judge Brown found that the "plain language of §

1681t(b)(1)(F) precludes Plaintiff's defamation claim because that claim would constitute a

'prohibition . . . imposed under the laws of any State . . . relating to the responsibilities of persons

who furnish information to the [CRAs]'" and that the defamation claim was barred under § 1681h(e)

as well because the "allegations rely on conduct that falls within § 1681s-2(a), which is enforceable

only by federal and state officials."  *Id*.  Judge Brown did not address the relationship between the

two statutes or the tension inherent therein but did follow two California cases (*Davis v. Maryland*

*Bank, N.A.*, No. 00-04191, 2002 WL 32713429 (N.D. Cal. June 19, 2002), and *Roybal v. Equifax*,

405 F.Supp.2d 1177 (E.D. Cal. 2005)) which employed the "total preemption" approach.

Exactly one year later, Judge Mosman considered whether a plaintiff's claims under the

Oregon Act and Oregon's Unlawful Trade Practices Act were preempted by the Credit Act. *Thomas*

*v. U.S. Bank, N.A.*, No. CV 05-1725-MO, 2007 WL 746312 (D. Or. March 8, 2007). Judge Mosman

found that the unlawful trade practices claim, based on wilfully made false or misleading

representations, was entirely preempted by § 1681t(b)(1)(F) but that the claim brought under the

Oregon Act, which alleged unlawful collection efforts, not the reporting of information, was not

preempted. *Id*. at *8-9. Like Judge Brown, Judge Mosman did not specifically address the

relationship between the two statutes in *Thomas* but impliedly did so later by adopting Judge

Stewart's Findings and Recommendation in *Weseman v. Wells Fargo Home Mortg. Inc.*, No. CV 06-

1338-ST, 2008 WL 542961 (D. Or. Feb. 22, 2008).

In *Weseman*, Judge Stewart specifically addressed the tension between the Credit Act's two

preemption provisions and adopted the "statutory" approach despite Judge Brown's prior opinion.

Judge Stewart explained that:

> Contrary to Judge Brown, this court is persuaded by the reasoning of the
> courts which adopt the "statutory" approach. It is noteworthy that this is not the only
> court in which judges from the same district disagree on this issue. In *Gorman v.*
> *Wolpoff & Abramson, LLP*, 370 F Supp2d 1005, 1010 (ND Cal 2005), Judge Ware
> rejected *Davis* "because it violates a canon of statutory construction by allowing a
> general statute to trump a specific statute." And in contrast to *Roybal*, the court in
> *Woods v. Protection One Alarm Monitoring, Inc.*, 2007 WL 2391075 *11 (ED Cal
> Aug. 22, 2007), held that a libel action could be maintained under § 1681h(e) if
> malice could be proved, but concluded that plaintiff failed to allege or prove a
> violation of § 1681s-2(b).
>
> This court not only agrees with Judge Ware, but also is persuaded by the
> reasoning in *Manno* that "in enacting [§ 1681]t(b)(1)(F), Congress seems to have

been most concerned with protecting credit information furnishers from state statutory obligations inconsistent with their duties under the FCRA." *Manno*, 439 F Supp2 at 425. It is noteworthy that § 1681t(b)(1)(F) specifically exempts two state statutes, and the 1996 amendments enacting § 1681t make no mention of § 1681h(e). Furthermore, the two provisions "can easily be read together to shield credit information furnishers against, on the one hand, state statutory claims, and on the other hand, state tort actions not involving willful or malicious conduct." *Id*. at 426. Thus, this court concludes that preemption of a negligence claim is governed by § 1681h(e).

*Weseman*, 2008 WL 542961, at *4. In addressing the plaintiff's argument that her negligence claim fell within the narrow exception carved out in § 1681h(e) for willful conduct, Judge Stewart found that the claim did not contain the necessary allegations of intent. *Id*. at *4-5. Therefore, Judge Stewart required plaintiff to amend her complaint to allege that defendant "furnished false information 'with malice or willful intent' to injure her." *Id*. Finally, earlier this year, Judge Simon also adopted the statutory approach and found that plaintiff's defamation claim was governed by, but not preempted under, § 1681h(e), relying primarily on Judge Stewart's analysis in *Weseman*. *Blair v. Bank of Am.*, N.A., No. 10-cv-946-SI, 2012 WL 860411 at *6-7 (D. Or. March 13, 2012).

This court finds the "statutory" approach the correct reading of the Credit Act and adopts the reasoning of Judge Stewart, concurred in by Judge Mosman, and also adopted by Judge Simon. Accordingly, Decker's state common-law claims for fraud, negligence, and defamation are governed by § 1681h(e) and are preempted by the Credit Act unless based on allegations that false information was "furnished with malice or willful intent to injure" Decker.

In support of his defamation claim, Decker alleges that Santander knowingly and maliciously communicated false information to credit bureaus. (Compl. ¶¶ 77-78. These allegations are sufficient to place the defamation claim within the narrow exception to § 1681h(e). However, Decker's fraud and negligence claims do not contain allegations that Santander acted with malice

or willful intent to injure him.  Should these claims survive Santander's alternative motions to dismiss, Decker should be allowed leave to file an amended complaint containing the required allegations of malice or willful intent to injure.

## IV.  Fourth Claim for Relief – Common-Law Fraud

In support of his fraud claim, Decker alleges that Santander repeatedly made knowing false representations to the credit bureaus with the intent that third parties rely on them and that Wells Fargo relied on the false representations in denying Decker's request for additional credit and increasing the interest rate on Decker's existing credit.  Santander argues that Decker is unable to establish the requisite causal nexus between the false representations and Decker's injury. Specifically, Santander asserts that Decker must allege that the false representations were made to Decker and that Decker relied on them to his detriment.  Decker contends that evidence of third-party reliance is adequate.

In Oregon, the prima facie elements of a common-law fraud claim are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the listener in the manner reasonably contemplated; (6) the listener's ignorance of the representation's falsity; (7) the listener's reliance on the truth of the representation; (8) the listener's right to rely thereon; and (9) the listener's consequent and proximate injury.  *Webb v. Clark*, 274 Or. 387, 391 (1976).  "If any one of these elements is not established by clear and convincing evidence, plaintiff's case must fail."  *Id*.  "Clear and convincing evidence means that the truth of the facts asserted is highly probable.  *Coy v. Starling*, 53 Or. App. 76, 80 (1981).  Accordingly, to state a claim for common-law fraud under Oregon law, Decker must allege that Santander made false representations to him with the intent that

he rely on them, that he was unaware of the falsity of the representations, and that he relied on the representations to his detriment. While Decker has adequately alleged that the statements made by Santander were false and that he was injured as a result of the false statements, he can not allege that the statements were made to him with the intent that he rely on them, he was unaware of the statements' falsity, or he relied on those statements in any way.

Decker attempts to overcome these deficiencies by arguing that in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), the Supreme Court held that a plaintiff may rely on third-party reliance in support of a common-law fraud claim. To the contrary, the Supreme Court was addressing the specific issue of whether third-party reliance would support a claim for mail fraud under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and consistently differentiated between a RICO mail fraud claim and a common-law claim.

The Supreme Court identified the issue presented to it as "whether a plaintiff asserting a RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations" and indicated that it granted certiorari "to resolve the conflict among the Courts of Appeals on 'the substantial question' whether first-party reliance is an element of a civil RICO claim predicated on mail fraud." *Id*. at 641, 646. In addressing the defendant's argument that the first-party reliance requirement of common-law fraud claims should be applied to mail fraud alleged in support of a RICO claim, the Court distinguished between the two claims.

The Court explained that mail fraud, as a predicate act under RICO, requires merely the use of the mails in furtherance of a scheme to defraud "even if no one relied on the misrepresentation" relying on a prior decision in which it held that "[t]he common-law requiremen[t] of 'justifiable reliance' . . . plainly ha[s] no place in the [mail, wire, or bank] fraud statutes." *Id*. at 648-49 (quoting

*Neder v. United States*, 527 U.S. 1, 24-25 (1999)).  It then reasoned that the choice of Congress to define the predicate act as "mail fraud – a statutory offence unknown to the common law" dictates against adopting the justifiable reliance requirement of common-law fraud.  *Bridge*, 553 U.S. at 652.  "There is simply 'no reason to believe that Congress would have defined "racketeering activity" to include acts indictable under the mail and wire fraud statutes, if it intended fraud-related acts to be predicate acts under RICO only when those acts would have been actionable under the common law."  *Id.*  (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 477-78 (2006)).  The court again distinguished between mail fraud and common-law fraud in addressing defendant's argument that first-party reliance is also required to establish the element of causation under RICO.

> [T]he predicate act here is not common-law fraud, but mail fraud.  Having rejected petitioners' argument that reliance is an element of a civil RICO claim based on mail fraud, we see no reason to let that argument in through the back door by holding that the proximate-cause analysis under RICO must precisely track the proximate-cause analysis of a common-law fraud claim. "Reliance is not a general limitation on civil recovery in tort; it 'is a specialized condition that happens to have grown up with common law fraud.'"

*Id.* at 655-56 (citations omitted).

Ultimately, the court rejected defendant's argument that the first-party reliance required to support a common-law fraud claim should dictate the elements of a RICO claim based on mail fraud. "The mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not meant that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim." *Id.* at 653 (quoting *Anza*, 547 U.S. at 476).  The court then held that a RICO plaintiff alleging predicate acts of mail fraud may prevail by showing that someone other than the plaintiff relied on the defendant's misrepresentations provided the plaintiff can also establish that they were injured as a result of such third-party reliance, but that "a plaintiff asserting a RICO

claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Id*. at 660-61.

Despite Decker's claim that *Bridge* stands for the proposition that a plaintiff asserting a common-law fraud claim need not allege or prove first-party reliance, the Court in *Bridge* clearly limited its analysis and holding to plaintiff's asserting RICO claims based on predicate acts of mail fraud.  While doing so, the court consistently recognized and upheld the requirement of first-party reliance, which remains intact for common-law fraud claims.  *Bridge* does not alter the elements of a common-law fraud claim.    Because Decker has failed to allege that he relied on the false statements made by Santander to the credit bureau, he has failed to state a claim for common-law fraud.  Decker's Fourth Claim for Relief for common-law fraud should be dismissed.

## V.  Fifth Claim for Relief – Negligence

Santander moves to dismiss Decker's negligence claim arguing that it is barred by the "economic loss rule", which provides that a party may not recover economic losses in a negligence setting – only damages for physical injury to person or property.  Decker asserts that Santander owed him a duty to correct misrepresentations made to the credit bureaus once Decker made them aware that the Loan had been settled and that he is entitled to recover economic damages for breach of that duty.

It is settled law in Oregon that "under some circumstances, one may be liable for economic loss sustained by others who rely on one's representations negligently made." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 159 (1992). Any attempt to recover economic losses under a negligence claim, however, "must be predicated on some duty of the negligent actor to the injured

party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Id*.

Although the court in *Onita* determined that the "scope of the duty" and the "scope of the recovery" should be determined on a case-by-case basis, it delineated some instances in which the law imposes, or may impose, a tort duty of care on a party to protect the other parties to the relationship. The Oregon Supreme Court expressly recognized the following professional or contractual relationships that give rise to a tort duty of care to further the economic interests of the client: 1) attorney-client, including intended beneficiaries of the duty to the client; 2) engineers-client, including intended beneficiaries; 3) architects-client, including intended beneficiaries; 4) agent-principal; 5) real estate agent-principal; and 6) primary insurer, to the excess insurer and to the insured, to exercise care in attempting to settle third-party claims within policy limits. *Id*. at 159-161 (see cases cited therein). In sum, the Oregon Supreme Court stated that "nongratuitous suppliers of information owe a duty to their clients or employers or to intended third-party beneficiaries of their contractual, professional, or employment relationship to exercise reasonable care to avoid misrepresenting facts." *Id*. at 165.

A review of the Oregon Supreme Court's discussions in both *Onita* and *Conway v. Pacific Univ.*, 324 Or. 231, 240 (1996), reveals that the salient feature of these relationships is one party is acting, in part, to further the economic interests of the other. *Accord A.T. Kearney, Inc. v. Int'l Bus. Machines Corp.*, 73 F.3d 238, 242 (9th Cir. 1995).

> Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a *special responsibility* toward the other party. This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at

Page 19 - FINDINGS AND RECOMMENDATION                                         *{SIB}*

issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.

*Conway*, 324 Or. at 240.

A heightened duty may also arise from statutory language. *Bell v. Public Emp. Ret. Bd.*, 239 Or. App. 239, 245 (2010). "Whether a statute creates a duty, the breach of which would be tortious to the one harmed as a result of the breach, is determined by discerning what the legislature intended." *Id*. (citations omitted). Thus, to state a negligence claim for economic losses based on a duty created by statute, "plaintiff must persuade us that the statute's author intended not only to create a duty, but also that 'the breach of any such duty would give rise to tort liability.'" *Id*. at 245-46 (quoting *Wild Rose Land Enters. v. Benton County,* 210 Or. App. 166, 171 (2006)).

The court finds, and Decker appears to concede, that the relationship between a debtor and the purchaser of the debt is not a relationship that creates a heightened duty of care. Decker did not give Santander the authority to exercise independent judgment on his behalf and Santander was not tasked with acting to further the economic interests of Decker. The relationship between Decker and Santander was contractual, which does not give rise to a special relationship. *Stevens v. First Interstate Bank of Cal.*, 167 Or. App. 280, 287-88 (2000). Decker does, however, argue that "Santander owed Plaintiff a duty related to the manner in which it collected any alleged debt and a duty related to its report of Plaintiff's information to the Credit Bureaus that is protected by a number of state and federal statutes" and specifically cites to 15 U.S.C. § 1692 *et seq.*, 15 U.S.C. § 1681 *et seq.*, and OR. REV. STAT. 646. 639 as the statutes which create the duty.

Decker alleges in his negligence claim that Santander breached a duty owed to Decker to contact the credit bureaus and correct its previous misrepresentations once Decker advised Santander

that the Loan had been settled. Decker bases his negligence claim on Santander's misrepresentations to the credit bureaus. OR. REV. STAT. 646. 639 relates solely to attempts to collect a debt and communications with the debtor, not representations made to credit bureaus. Accordingly, this statute does not create a duty upon which Decker may base his negligence claim.

Decker also generally refers to two other statutes, the Federal Act (15 U.S.C. § 1692 *et seq.*) and the Credit Act (15 U.S.C. § 1681 *et seq.*), as statutes creating a heightened duty of care to correct false information provided to credit bureaus. While these statutes do address the misconduct alleged in Decker's negligence claim, this fact alone does not create an independent duty of care. *See Medici v. JPMorgan Chase Bank, N.A.*, No. 3:11-cv-00959-HA, 12012 WL 929785, at *6 (D. Or. 2012)(state statute which governed use of mortgages and trust deed in Oregon did not establish legislative intent to create special duty from trustee to grantor of trust deed). Decker has not referenced any specific provision, or combination of provisions, in either statute which evidence an intent by Congress to create a heightened duty of care in the scenario currently before the court. Furthermore, Decker has not argued, and not offered any authority, that a federal statute, rather than a state statute, could provide the independent duty necessary to recover solely economic damages on a common-law negligence claim. *See Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 420-21 (9th Cir. 2011)("We have looked for Oregon cases premising the statutory duty exception to the economic loss doctrine on a federal, as opposed to a state, statute, and have found none, leaving us skeptical that Oregon law would cross jurisdictions for these purposes.").

Decker has failed to persuade the court that under Oregon law, federal statutes may provide the duty to support an economic loss in a negligence setting, or that the authors of the Federal Act and the Credit Act intended to not only create an independent duty of care, but also that the breach

of any such duty would give rise to tort liability.  Decker is not entitled to recover for economic damages, or emotional distress damages related thereto, under his Fifth Claim for Relief for negligence.  Accordingly, this claim should be dismissed.

## VI.  Seventh Claim for Relief – Defamation

Decker alleges that Santander acted "maliciously, recklessly, or in bad faith" by knowingly communicating a statement to the credit bureaus that was defamatory to him.  (Compl. ¶¶ 77-78.) Santander asserts that because the communication was made on a subject of mutual concern to itself and the credit bureaus, the communication is subject to a qualified privilege and can not support a claim for defamation.

Oregon law recognizes two privilege defenses to a defamation claim: an absolute privilege and a qualified privilege.  An absolute privilege, which applies in a very narrow range of circumstances and it not relevant here, is a complete bar to a defamation claim.  A qualified privilege, on the other hand, generally protects a statement when:  1) it was made to protect the interests of defendants; 2) it was made to protect the interests of plaintiff's employer; or 3) it was on a subject of mutual concern to defendants and the person to whom the statement was made." *Vanderselt v. Pope*, 155 Or. App. 334, 344 (1998) (quoting *Wattenburg v. United Medical Lab.*, 269 Or. 377, 380 (1974)).  A plaintiff may overcome a qualified privilege by proving that the defendant acted with actual malice.  *Pac. Nw. Instruments Inc. v. Dun and Bradstreet, Inc.*, 362 F. Supp. 384, 385 (D. Or. 1973); *Christianson v. State*, 239 Or. App. 451, 459 (2010)(citing *DeLong v. Yu Enterprises, Inc.*, 334 Or. 166, 170 (2002)).

While Santander may have been communicating with the credit bureaus on a subject of mutual concern and, therefore, be subject to the protection of the qualified privilege, Decker's

allegations that Santander acted with malice are sufficient to overcome the privilege.  The allegations

that Santander continued to report to the credit bureaus that Decker owed over $178,000 on the Loan

and that Loan was past due despite Decker's advising Santander of the Settlement and that the Loan

was settled provide factual support for allegation of actual malice.  The court finds that Decker has

alleged a viable claim for defamation and recommends denying Santander's motion to dismiss this

claim.

*Conclusion*

Santander's motion (#5) to dismiss should be DENIED with regard to Decker's Second

Claim for Relief for violation of the Federal Act, Third Claim for Relief for violation of the Oregon

Act, and Seventh Claim for Relief for common-law defamation, and GRANTED with regard to

Decker's Fourth Claim for Relief for common-law fraud and Fifth Claim for Relief for common-law

negligence.

<u>Scheduling Order</u>

The Findings and Recommendation will be referred to a district judge for review.
Objections, if any, are due **September 28, 2012**.  If no objections are filed, then the Findings and
Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy
of the objections.  When the response is due or filed, whichever date is earlier, the Findings and
Recommendation will go under advisement.

DATED this 13th day of September, 2012.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge